UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THEIL THAMAR STAPLETON,

                Plaintiff,

      v.

J. PAGANO, *et al.*,

                Defendants.

No. 19-CV-952 (KMK)

OPINION & ORDER

APPEARANCES:

Theil T. Stapleton
Ossining, NY
*Pro se Plaintiff*

Jennifer R. Gashi, Esq.
State of New York Office of the Attorney General
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Pro se Plaintiff Theil Thamar Stapleton ("Plaintiff") brings this Action, pursuant to 42 U.S.C. § 1983, against Deputy Superintendent of Administration J. Pagano ("Pagano"), Deputy Superintendent of Health S. Henton ("Henton"), Nurse Administrator K. Ferdous ("Ferdous"), Dr. T. Alam ("Alam"), Sergeant Ortega ("Ortega"), and Correction Officers ("C.O.") F. Bailey ("Bailey") and R. Carrington ("Carrington") (collectively, "Defendants"), alleging that Defendants violated Plaintiff's constitutional rights by subjecting him to improper conditions of confinement and denial of medical care. (*See generally* Compl. (Dkt. No. 2).) Before the Court is Defendants' Motion To Dismiss (the "Motion"). (*See* Not. of Mot. (Dkt. No. 35).) For the reasons discussed below, the Motion is granted.

I.  Background

A.  Factual Background

The following facts are taken from the Complaint and assumed true for the purposes of resolving the instant Motion.

Plaintiff, an inmate at Sing Sing Correctional Facility ("Sing Sing"), suffers from a skin condition that causes "burning sensations on certain areas of his skin." (Compl. 3.)[1] When Plaintiff scratches his skin, the skin "breaks and bleeds." (*Id.*) Until recently, Plaintiff's primary medical provider, Alam, and a dermatologist provided Plaintiff with "necessary treatment" for his condition. (*Id.*)[2] However, sometime before March 29, 2018, Alam informed Plaintiff that he could not continue to provide Plaintiff with his previous treatment because Ferdous, Henton, and Pagano had ordered him "to end (suspend) all specialized ca[]ses of treatment." (*Id.* at 2–3) This directive, which suspended "[a]ll specialized medical treatment . . . without conducting any follow-up examinations," was issued after Bailey and Carrington complained to Ortega "about prisoners with medical showers," and after Ortega told Pagano that "medical showers only make more work for his officers." (*Id.* at 3–4.) In response, Pagano "escorted all primary health care providers . . . to the bathhouse area and told them 'there is no reason why an inmate should be issued a[] medical shower pass.'" (*Id.* at 3.)

Plaintiff currently lacks the ability to properly clean the infected area on his skin, particularly his testicles. (*Id.* at 4.) As a result, Plaintiff suffers from "increased burning sensations," increased skin irritation, and increased bleeding when he scratches himself. (*Id.*)

---

[1] Citations to Plaintiff's Complaint and Opposition reflect the page numbers contained in the ECF stamp.

[2] Although Plaintiff does not specify what this "treatment" consists of, it seems (based on his related allegations) that he may be referring to authorization to take additional showers.

Plaintiff is also experiencing "[u]nnecessary pressure placed on [his] knees." (*Id.*) Plaintiff further alleges that Henton and Ferdous have "posed threats to prisoners who complain," specifically declaring that "whoever complains will have their medical needs met in another facility." (*Id.* at 3–4.) Additionally, Plaintiff alleges that his cell has water damage, peeling paint, mold growth, and a leaky ceiling, and that his cell block has "no ventilation." (*Id.* at 3.)

Plaintiff seeks hundreds of thousands of dollars in damages, the "exempt[ion]" of Defendants "from indemnification and qualified immunity,"[3] and an order enjoining "all-non-medical staff from accessing[,] interfering[,] influencing[,] and compromising prisoner medical records and treatment plan[s]." (Compl. 6.) Plaintiff also seeks "an expedited hearing" to facilitate the swift reinstatement of his treatment. (*Id.*)

B.  Procedural Background

On January 30, 2019, the Court docketed Plaintiff's Complaint and request to proceed in forma pauperis ("IFP"). (*See* Dkt. Nos. 1–2.) IFP status was granted on February 7, 2019. (*See* Dkt. No. 4.) While Plaintiff initially encountered difficulties in identifying and serving Carrington, (*see* Dkt. Nos. 15, 19, 23–25, 28), Carrington was eventually identified on July 8, 2019, and served on August 8, 2019, (*see* Dkt. Nos. 26, 33). On September 20, 2019, Defendants filed this Motion and accompanying papers. (*See* Not. of Mot.; Defs.' Mem.) On October 10, 2019, the Court docketed Plaintiff's Opposition. (*See* Pl.'s Mem. of Law in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 37).) On November 8, 2019, Defendants filed their Reply. (Defs.' Reply Mem. of Law in Further Supp. of Mot. ("Defs.' Reply") (Dkt. No. 38).)

---

[3] Defendants do not invoke the doctrine of qualified immunity in their Motion. (*See generally* Defs.' Mem. in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 36).)

II.  Discussion

A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous

4

departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[ ] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted).

B.  Analysis

Liberally construed, the Complaint seeks to plead violations of the Eighth Amendment based on deliberate indifference to Plaintiff's medical needs and inadequate conditions of confinement, and violations of the First Amendment based on threats of retaliation. (*See generally* Compl.) Defendants argue that Plaintiff's allegations regarding his medical situation are insufficiently serious to give rise to an Eighth Amendment violation; that Plaintiff has failed to adequately allege that Defendants possessed the requisite state of mind for Eighth Amendment violations; that Plaintiff's cell conditions are constitutionally adequate; and that Plaintiff has failed to plead the personal involvement of most Defendants. (*See generally* Defs.' Mem.) The Court addresses these arguments only to the extent necessary to resolve the instant Motion.

1.  Deliberate Indifference to Medical Needs

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To successfully state a constitutional violation based on such deliberate indifference, an inmate must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that the defendants "acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017). The first element is "objective" and requires that a plaintiff show that the "alleged deprivation of adequate medical care [is] sufficiently serious." *Spavone*, 719 F.3d at 138 (citation and quotation marks omitted). In other words, a plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted). Analyzing this objective requirement involves two inquiries: "whether the prisoner was actually deprived of

6

adequate medical care," and "whether the inadequacy in medical care is sufficiently serious," which in turn "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006) (citations omitted). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has offered the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Id.* (citation and quotation marks omitted).

The second element, which goes to mental state, requires a plaintiff to show that prison officials were "subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138 (citation omitted). This means that the official must have "appreciate[d] the risk to which a prisoner was subjected," and have had a "subjective awareness of the harmfulness associated with those conditions." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *see also Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (citation, footnote, and quotation marks omitted)). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280 (citation omitted). An official's

7

awareness of the risk of serious harm can be established through "inference from circumstantial evidence," including "from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). However, "mere negligence" is insufficient to state a claim for deliberate indifference. *Walker*, 717 F.3d at 125 (quoting *Farmer*, 511 U.S. at 835). Neither does "mere disagreement over the proper treatment . . . create a constitutional claim"; "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

Here, Plaintiff's allegations are insufficient to satisfy the first element of an Eighth Amendment medical indifference claim because the medical condition he describes, and the allegedly inadequate treatment he received, are insufficiently serious. Plaintiff alleges only the denial of some unspecified "necessary treatment" (which, from context, may refer to a medical shower) caused an increase in skin irritation, and left his skin increasingly vulnerable to "breakage," "bleeding," and "peeling." (Compl. 3–4.) However, "a skin rash or condition, even one that involves bleeding and scarring, is not a medical condition that gives rise to an Eighth Amendment deliberate indifference claim." *Thurmond v. Thomas-Walsh*, No. 18-CV-409, 2019 WL 1429559, at *7 (S.D.N.Y. Mar. 29, 2019) (collecting cases); *see also Cooper v. Orange County*, No. 15-CV-10075, 2017 WL 3309754, at *5 (S.D.N.Y. Aug. 2, 2017) (holding that the plaintiff failed to allege an Eighth Amendment claim based on a skin rash because "the only stated symptoms . . . were an undescribed level and duration of pain, and eventually scarring," and because the plaintiff did not allege that he suffered "chronic and substantial pain or that [his skin condition] significantly affected his daily activities"), *appeal dismissed sub nom. Cooper v. Orange Cty. Jail*, No. 17-2815, 2018 WL 1276746 (2d Cir. Jan. 24, 2018); *Ahlers v. Kaskiw*, No.

12-CV-501, 2014 WL 4184752, at *10 (N.D.N.Y. Aug. 21, 2014) (holding that the plaintiff's skin rash and eczema were not sufficiently serious medical conditions to provide the objective element of an Eighth Amendment claim); *Purdie v. City of New York*, No. 10-CV-5802, 2011 WL 1044133, at *3–4 (S.D.N.Y. Mar. 15, 2011) ("A skin rash is generally insufficient to meet the objective requirement of a sufficiently grave and serious condition giving rise to a deliberate indifference claim." (citing, inter alia, *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (per curiam))); *Swindell v. Supple*, No. 02-CV-3182, 2005 WL 267725, at *7 (S.D.N.Y. Feb. 3, 2005) (explaining that a plaintiff's medical conditions, including occasional bleeding from cracked skin and "thick" and "painful" calluses, were "not of such an urgent and substantially painful nature as would satisfy the objective prong of the deliberate indifference standard" (citation and quotation marks omitted)); *Samuels v. Jackson*, No. 97-CV-2420, 1999 WL 92617, at *1–3 (S.D.N.Y. Feb. 22, 1999) (dismissing an action because the inmate's alleged skin conditions of "papules, vesicles, pustules, burrows, and intense itching" causing "constant scratching of the affected areas, causing open sores, and abrasions" and "permanent scars" did not constitute a sufficiently serious medical condition to sustain an Eighth Amendment claim for deliberate indifference (record citations, alteration, and quotation marks omitted)).

Moreover, Plaintiff "has not alleged that his condition has impacted his daily activities and . . . has not alleged any facts that establish that his condition was any worse than the similar types of skin conditions that courts in the Second Circuit have repeatedly found are not serious medical conditions." *Thurmond*, 2019 WL 1429559, at *7. Finally, Plaintiff does not specify what treatment he seeks, or explain how or why he believes it would be helpful to him. His claims thus also fail because they are "[v]ague and conclusory." *Jackson v. Westchester County*, No. 18-CV-7207, 2019 WL 3338020, at *6 (S.D.N.Y. July 25, 2019) (citation and quotation

marks omitted); *see also Smalls v. Wright*, No. 16-CV-2089, 2017 WL 3474070, at *3 (D. Conn. Aug. 11, 2017) (explaining that a plaintiff's contention that a defendant doctor "knowingly persisted in a course of treatment that was ineffective and left [the plaintiff] in extreme pain" was "conclusory and devoid of factual support" (record citation, alteration, and quotation marks omitted)); *Henrius v. County of Nassau*, No. 13-CV-1192, 2015 WL 5542464, at *1 (E.D.N.Y. Sept. 16, 2015) (explaining that conclusory allegations of denial of medical care are "not entitled to the assumption of truth" on a motion to dismiss (citations omitted)). Accordingly, Plaintiff's claim of inadequate medical care is dismissed.

2. Conditions of Confinement Claim

In addition to medical treatment, inmates have the right to physical conditions of confinement that do not "involve the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, inmates do not have a right to "comfortable" prison conditions. *Id.* at 349. Thus,

> [t]o state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety.

*Walker*, 717 F.3d at 125 (citation, alteration, and quotation marks omitted). "To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Id.* (citations omitted); *see also Seymore v. Dep't of Corr. Servs.*, No. 11-CV-2254, 2014 WL 641428, at *3 (S.D.N.Y. Feb. 18, 2014) ("[T]he Second Circuit . . . has explained that '[b]ecause society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement claim.'" (alteration in original) (citation omitted)). To meet the subjective element,

10

a plaintiff must show that the defendant "acted with more than mere negligence," and instead knew of and disregarded an "excessive risk to inmate health or safety." *Walker*, 717 F.3d at 125 (citations and quotation marks omitted). Under the Eighth Amendment, officials may not "create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety." *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003).

Here, Plaintiff alleges only that his cell had a leaky ceiling, peeling paint, mold, and lacked ventilation. (Compl. 3.) The Court need not decide whether such allegations suggest a sufficiently extreme deprivation to state a constitutional violation, because in any event, Plaintiff's claim fail for two other reasons. First, Plaintiff does not allege that Defendants knew about the state of his cell's paint, ceiling, mold, or ventilation problems. (*See generally* Compl.) Thus, Plaintiff has failed "to allege any facts to support the subjective element of the claim, i.e., that Defendants knew of and disregard[ed] an excessive risk to inmate safety." *Bryant v. Capra*, No. 18-CV-10198, 2020 WL 508843, at *11 (S.D.N.Y. Jan. 31, 2020) (citation and quotation marks omitted). This failure alone warrants dismissal. *See id.* (dismissing Eighth Amendment conditions of confinement claim for failure to allege facts suggesting that the defendants possessed the requisite state of mind); *Clay v. Lee*, No. 13-CV-7662, 2019 WL 1284290, at *7 (S.D.N.Y. Mar. 20, 2019) (dismissing conditions of confinement claim where the plaintiff failed to "show that any particular [d]efendant acted with any mental state, let alone the 'subjective recklessness' required to state deliberate indifference" (citing *Salahuddin*, 467 F.3d at 280); *Thomas v. DeCastro*, No. 14-CV-6409, 2018 WL 1322207, at *14 (S.D.N.Y. Mar. 13, 2018) (dismissing Eighth Amendment conditions of confinement claim where the complaint "fail[ed] to allege that any [d]efendant was aware of facts from which the inference could be drawn that the conditions . . . specifically posed a substantial risk of serious harm to [the p]laintiff, or that

[the d]efendants in fact drew such an inference" (citation, footnote, and quotation marks omitted)).

Second, Plaintiff does not connect the physical conditions of his cell to any act by any Defendant. Indeed, Plaintiff has not alleged that any Defendant created, sustained, or exercised any authority in failing to rectify any condition that he describes. (*See generally* Compl.) This too is fatal to Plaintiff's claim. "Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on a claim for damages under § 1983." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001). Because "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," *Iqbal*, 556 U.S. at 676, the failure to allege any connection between the Defendants and Plaintiff's cell conditions fatally undermines Plaintiff's claims, *see Collins v. Fischer*, No. 15-CV-103, 2018 WL 1626528, at *8 (S.D.N.Y. Mar. 30, 2018) (dismissing conditions of confinement claim where the plaintiff "fail[ed] to identify an individual who is responsible for the conditions of which he complains").

### 3. Retaliation Claim

To state a First Amendment retaliation claim, Plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (citation, alteration, and quotation marks omitted); *see also Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (same). An adverse action is any "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citation omitted). In determining

whether a prison official's conduct constitutes adverse action, "the court's inquiry must be tailored to the different circumstances in which retaliation claims arise, bearing in mind that prisoners may be required to tolerate more than average citizens." *Id.* (citation, alterations, and quotation marks). "[B]ecause virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act," the Second Circuit has instructed district courts to "approach prisoner retaliation claims with skepticism and particular care." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation and quotation marks omitted); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." (citation and quotation marks omitted)). Accordingly, First Amendment retaliation claims brought by prisoners must "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan*, 794 F.3d at 295 (citation and quotation marks omitted).

Here, in support of his retaliation claim, Plaintiff alleges only that Ferdous and Henton "posed threats to prisoners who complain," warning inmates that "whoever complains will have their medical needs met in another facility." (Compl. 3–4.) These allegations are insufficient to state a retaliation claim for several reasons. First, "verbal threats may qualify as adverse actions" in the prison retaliation context *only* where they are "sufficiently specific and direct." *White v. Westchester County*, No. 18-CV-730, 2018 WL 6726555, at *17 (S.D.N.Y. Dec. 21, 2018) (collecting cases); *see also Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *11 (S.D.N.Y. Sept. 28, 2018) (same); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010) (explaining that "[t]he less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights"); *Hofelich v. Ercole*, No. 06-CV-13697, 2010 WL 1459740, at *2

(S.D.N.Y. Apr. 8, 2010) (concluding that "whether [verbal threats] constitute adverse action seems to depend on their specificity and the context in which they are uttered" (citation and quotation marks omitted)). Here, however, Defendants' alleged statement that "whoever complains will have their medical needs met in another facility" was stated generally, not directed at Plaintiff. (Compl. 3–4.) Additionally, Defendants' alleged statement—suggesting only a prison transfer to receive alternative medical care—is not, at least on its face, a "threat" at all. Moreover, insofar as the statement could be interpreted as a threat, it is far more benign than many threats courts in the Second Circuit have considered insufficient to constitute an adverse action. *See Terry*, 2018 WL 4682784, at *11 (dismissing a First Amendment retaliation claim because the alleged threat was insufficiently specific and direct even where corrections officers stated "they were gonna kill" the plaintiff (record citation, alterations, and quotation marks omitted)); *see also Albritton v. Morris*, No. 13-CV-3708, 2016 WL 1267799, at *18 (S.D.N.Y. Mar. 30, 2016) (dismissing First Amendment retaliation claims because an officer's statements to a plaintiff that his "grievances were unlikely to succeed" and that he "would handle things 'his way'" were insufficiently specific or direct (record citation and quotation marks omitted)); *Barrington v. New York*, 806 F. Supp. 2d 730, 746 (S.D.N.Y. 2011) (granting summary judgment in favor of a defendant who told an inmate that "'me and my boys . . . going to get you' while brandishing a copy of a grievance"); *Bilal v. N.Y. State Dep't of Corr.*, No. 09-CV-8433, 2010 WL 2506988, at *16 (S.D.N.Y. June 21, 2010) ("Neither [the defendant's] comment . . . that [the plaintiff] was 'lucky' because correction officers 'usually fuck people up for writing a bunch of bullshit grievances' nor his . . . comment that '[y]ou're not the only one who can write. I'm willing to bet you'll break or get broke up,' was a 'direct' nor 'specific' threat." (alterations and record citations omitted)), *aff'd sub nom. Bilal v. White*, 494 F. App'x 143 (2d Cir. 2012); *Mateo*

14

*v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010) ("The opacity of [the defendant's] threats to [the plaintiff]—that [the plaintiff] should 'wait till he put his hands on me,' and that 'one day he and I will party,'—softens the deterrent effect considerably." (record citations omitted)); *cf. Perkins v. Perez*, No. 17-CV-1341, 2019 WL 1244495, at *14 (S.D.N.Y. Mar. 18, 2019) (holding that a threat was sufficient to constitute an adverse action where "[the p]laintiff explain[ed] when and where the threat took place"); *White*, 2018 WL 6726555, at *14 ("This allegation constitutes a specific, clear threat made in response to [the p]laintiff's prospective grievance against [the d]efendant . . . . [The defendant] threatened physical harm to [the p]laintiff, and did so with particularity, by pointing to the inmates who would harm [the p]laintiff and explaining why they would harm him at her direction."). In sum, Plaintiff has failed to allege "facts plausibly suggesting that this conduct was substantial enough to deter an inmate of ordinary firmness from filing grievances or otherwise engaging in protected conduct." *Tutora v. Gessner*, No. 17-CV-9517, 2019 WL 1382812, at *7 (S.D.N.Y. Mar. 27, 2019) (citation omitted). Accordingly, Plaintiff's retaliation claim is dismissed.

### III.  Conclusion

For the reasons stated above, the Motion is granted. Because this is the first adjudication of Plaintiff's claims, dismissal is without prejudice. Plaintiff may amend his complaint to resolve the defects identified in this Opinion & Order. If Plaintiff wishes to file an amended complaint, Plaintiff must do so in 30 days. Plaintiff is advised that the amended complaint will replace, not supplement, the instant Complaint. The amended complaint must contain *all* of the claims, defendants, factual allegations, and exhibits that Plaintiff wishes the Court to consider. If

Plaintiff fails to timely file an amended complaint, the Court may convert the current dismissal without prejudice to dismissal with prejudice.

The Clerk of Court is respectfully requested to terminate the pending Motion, (Dkt. No. 35), and to mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

Dated: August 11, 2020
       White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE