UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THEIL THAMAR STAPLETON,

                    Plaintiff,

                    -v-

J. PAGANO, *et al.*,

                    Defendants.

No. 19-CV-952 (KMK)

OPINION & ORDER

---

Appearances:

Theil T. Stapleton
Ossining, NY
*Pro se Plaintiff*

Kathryn E. Martin, Esq.
State of New York Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Pro se Plaintiff Theil Thamar Stapleton ("Plaintiff") brings this Action, pursuant to 42 U.S.C. § 1983, against Deputy Superintendent of Administration J. Pagano ("Pagano"), Deputy Superintendent of Health S. Henton ("Henton"), Nurse Administrator K. Ferdous ("Ferdous"), Dr. T. Alam ("Alam"), Sergeant Ortega ("Ortega"), and Correction Officers ("C.O.") F. Bailey ("Bailey") and L. Carrington ("Carrington") (collectively, "Defendants"), alleging that Defendants violated Plaintiff's constitutional rights by subjecting him to improper conditions of confinement and denial of medical care. (*See generally* Am. Compl. (Dkt. No. 41).) Before the Court is Defendants' Motion To Dismiss (the "Motion"). (*See* Not. of Mot. (Dkt. No. 45).) For the reasons discussed below, the Motion is granted.

I. Background

A. Factual Background

The Court summarized Plaintiff's allegations in its August 11, 2020 Opinion & Order ("2020 Opinion"). (*See* Op. & Order ("2020 Op.") (Dkt. No. 39).) Thus, the Court assumes familiarity with the 2020 Opinion and describes only the new facts alleged since it was issued. For purposes of the instant Motion, the Court assumes that the alleged facts are true.

Plaintiff's allegations fall into two categories. The first category concerns the allegedly inadequate medical treatment Plaintiff has received in prison. Here, as in the initial Complaint, Plaintiff alleges that Alam and a dermatologist prescribed a daily medical shower so that Plaintiff could wash and apply medicine to a skin condition near his groin area; that Bailey and Carrington complained about prisoners' increased shower usage, which created more work for them; and that, as a result of Bailey and Carrington's complaints, Ortega, Pagano, Henton, and Ferdous suspended Plaintiff's right to take a daily medical shower. (Am. Compl. 1–2; *see also* Compl. 3–4 (Dkt. No. 2).)[1, 2] In the Amended Complaint, Plaintiff adds an allegation that on March 29, 2018, he "made [a] complaint as it relates to the process in which [his] medical treatment [was] being terminated without consult[ation] [regarding] . . . alternative treatments," and that he "expressed his concerns about security having input as to how certain medical treatments [were] authorized." (Am. Compl. 2.)[3] Plaintiff also adds an entirely new allegation

---

[1] Citations to the Complaint and Amended Complaint refer to the ECF-generated page numbers at the top of each page.

[2] Whereas the initial Complaint referred to Defendant Carrington as "R. Carrington," (*see* Compl. 2), the Amended Complaint refers to this Defendant as "L. Carrington," (Am. Compl. 1).

[3] Quotations from Plaintiff's submissions occasionally reflect minor corrections to spelling and grammar.

2

regarding a knee condition. Specifically, Plaintiff asserts that after he received surgery on his left knee, Alam failed to schedule physical therapy, allegedly in retaliation for "Plaintiff's continued complaints against the medical department." (*Id.* at 2–3.) Plaintiff also adds a new allegation that he "has requested to be seen by dental and medical [but] has not been scheduled to see any physician." (*Id.* at 3.)

The second category of allegations involves the conditions of Plaintiff's cell. The allegations in the Amended Complaint are largely similar to those in the initial Complaint, (*compare* Am. Compl. 3, *with* Compl. 3), with two distinctions. In the Amended Complaint, Plaintiff has added an allegation that "[o]n or about [May 20, 2017]," he "complained of the ventilation system not being operational and the influx of bird feces with dust being accumulated in the cell area of A-Block." (Am. Compl. 3.) Plaintiff further alleges that on June 15, 2017, while Pagano and "a civilian maintenance staff [official]" were making rounds, he informed both officials of his cell conditions. (*Id.*) He alleges that several months later, after the "cell had not been fixed," he again notified the "civilian staff [official]" that his cell needed "fixed." (*Id.*) Plaintiff alleges that this conversation took place "in the presence of [C.O.] Abdul-Raham," (*id.*), who is not a Defendant in this Action. Plaintiff also alleges that he made complaints regarding his cell conditions to other correction officers who are not Defendants here. (*See id.*) Finally, Plaintiff adds a new allegation regarding prison conditions in regard "to the current COVID-19 pandemic." (*Id.*) Part of this claim simply repackages Plaintiff's other allegations regarding allegedly unconstitutional prison conditions. (*See id.* (alleging that "the ventilation system is dysfunctional; there remain bird feces, dust, dirt, grime[,] and other bacteria adjacent to the cells and there is no air properly circulating").) The remainder of this claim is premised on the allegation that correctional staff members are "not adhering to any pandemic safety protocols" by

3

failing to wear masks at all times; failing to change gloves before and after cell searches and pat frisks; failing to practice social distancing; and failing to change into a different uniform before entering the facility upon arrival. (*Id.* at 3–4.)

Plaintiff seeks a declaratory judgment stating that Defendants violated his Eighth Amendment rights; that Plaintiff be scheduled to see "the specialist to re-assess his condition"; that Sing-Sing staff "be ordered to correct all maintenance issues that are compromising to Plaintiff's health; and that all correctional staff must adhere to "all pandemic safety protocols." (*Id.* at 4–5.) Plaintiff also seeks hundreds of thousands of dollars in damages and an order appointing him counsel. (*See id.* at 5.)

B.  Procedural History

Because the Court discussed the procedural background in the 2020 Opinion, the Court describes the procedural history of this case beginning with that Opinion. On August 11, 2020, the Court issued an Opinion & Order dismissing Plaintiff's Complaint without prejudice. (2020 Op. 15–16.) Plaintiff was given 30 days to file an amended complaint. (*Id.* at 15.) The 2020 Opinion was mailed to Plaintiff on the same day the Opinion was issued. (*See* Dkt. (entry for Aug. 11, 2020).) On September 17, 2020, after Plaintiff had failed to file an amended complaint within the 30-day window, the Court issued an Order To Show Cause as to why the case should not be dismissed for failure to prosecute. (Dkt. No. 40.) Plaintiff filed his Amended Complaint on September 21, 2020. (Dkt. No. 41.) On October 20, 2020, counsel for Defendants filed a pre-motion letter outlining the grounds for their proposed motion to dismiss. (Dkt. No. 43.) By Memo Endorsement entered November 6, 2020, the Court adopted a briefing schedule. (Dkt. No. 44.) On December 4, 2020, Defendants filed the instant Motion and supporting papers. (Dkt. Nos. 45–46.) Plaintiff failed to oppose the Motion. (*See* Dkt.)

4

II. Discussion

A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and citation omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration, citation, and quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-

pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  However, when the complaint is from a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (citation and quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant[']s request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the] plaintiff[']s possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted), and "his opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997).

6

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (citation and italics omitted)).

  B.  Analysis

    1.  Plaintiff's Failure to Cure Deficiencies

With respect to Plaintiff's Eighth Amendment medical indifference claim, the Court previously found that "Plaintiff's allegations are insufficient to satisfy the first element of [such a] claim because the medical condition he describes, and the allegedly inadequate treatment he received, are insufficiently serious."  (2020 Op. 8.)  As the Court explained, "a skin rash or condition, even one that involves bleeding and scarring, is not a medical condition that gives rise to an Eighth Amendment deliberate indifference claim."  (*Id.* (quoting *Thurmond v. Thomas-Walsh*, No. 18-CV-409, 2019 WL 1429559, at *7 (S.D.N.Y. Mar. 29, 2019)) (gathering cases).)  The Court also found that Plaintiff "ha[d] not alleged that his condition ha[d] impacted his daily activities and . . . ha[d] not alleged any facts that establish that his condition was any worse than the similar types of skin conditions that courts in the Second Circuit have repeatedly found are not serious medical conditions."  (*Id.* at 9 (ellipsis in original) (quoting *Thurmond*, 2019 WL 1429559, at *7).)  Finally, the initial Complaint did "not specify what treatment [Plaintiff] [sought], or explain how or why [Plaintiff] believe[d] it would be helpful to him," thus rendering

7

his claims "[v]ague and conclusory." (*Id.* (last alteration in original) (quoting *Jackson v. Westchester County*, No. 18-CV-7207, 2019 WL 3338020, at *6 (S.D.N.Y. July 25, 2019)).) The Amended Complaint cures none of these deficiencies. (*See* Am. Compl. 1–2.) Indeed, the allegations with respect to Plaintiff's skin condition are identical to those in the initial Complaint. (*Compare* Am. Compl., *with* Compl.) The condition described in the Amended Complaint, for example, is no more serious than that described in the initial Complaint. (*See* Am. Compl. 1–2.) Plaintiff still has not described how the condition impacted his daily activities, nor has he attempted to explain how his condition is more serious than other skin conditions which courts in this Circuit have found insufficient to meet the first element of an Eighth Amendment deliberate indifference claim. (*See id.*) As noted, the Amended Complaint does add an allegation that Plaintiff had complained about "the process [by] which [his] medical treatment [was] being terminated without" any consultation regarding "alternative treatments," and that he "expressed his concerns about security having input as to how certain medical treatments [were] authorized." (Am. Compl. 2.) That Plaintiff may have complained about the suspension of his daily showers, however, makes no difference in the final analysis. He still has failed to allege a sufficiently serious medical condition that would satisfy the first element of his deliberate indifference claim. Thus, the deliberate indifference claim alleged in the Amended Complaint is subject to dismissal for the same reasons identified in the 2020 Opinion.

With respect to Plaintiff's conditions-of-confinement claim, the Court previously found that this claim failed for two reasons: first, Plaintiff failed "to allege any facts to support the subjective element of the claim, i.e., that Defendants knew of and disregard[ed] an excessive risk to inmate safety," (2020 Op. 11 (alteration in original) (quoting *Bryant v. Capra*, No. 18-CV-10198, 2020 WL 508843, at *11 (S.D.N.Y. Jan. 31, 2020))); second, Plaintiff failed to allege

"that any Defendant created, sustained, or exercised any authority in failing to rectify any condition that he describes," and thus, Plaintiff failed to establish any Defendant's individual involvement in the alleged constitutional deprivation, (*id.* at 12). The Court therefore declined to reach the separate question of whether the alleged conditions—namely, a leaky ceiling, peeling paint, mold, and insufficient ventilation—"suggest[ed] a sufficiently extreme deprivation to state a constitutional violation." (*Id.* at 11.) In his Amended Complaint, Plaintiff alleges that on May 20, 2017, he complained about specific conditions in his cell, including an exposed ceiling, chipped paint, mold, and slime, as well as more general prison conditions such as inadequate ventilation and an accumulation of "bird feces with dust . . . in the cell area of A-Block." (Am. Compl. 3.) However, Plaintiff does not provide any supporting detail about this alleged complaint, including to whom it was made. (*See id.*) The only allegation that implicates any of the named Defendants is Plaintiff's assertion that on June 15, 2017, he informed Pagano and a separate, unidentified maintenance official "of the conditions of his cell." (*Id.*) But even assuming that this allegation satisfies the subjective element of Plaintiff's claim, Plaintiff still has not alleged that Pagano "created, sustained, or exercised any authority in failing to rectify [the] condition[s] that [Plaintiff] describes." (2020 Op. 12.) Because "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," *Iqbal*, 556 U.S. at 676, the failure to allege any connection between the Defendants and Plaintiff's cell conditions fatally undermines Plaintiff's claims, *see Collins v. Fischer*, No. 15-CV-103, 2018 WL 1626528, at *8 (S.D.N.Y. Mar. 30, 2018) (dismissing conditions-of-confinement claim where the plaintiff "fail[ed] to identify an individual who is responsible for the conditions of which he complains"). Thus, the Amended Complaint fails to

9

correct at least one of the deficiencies identified in the 2020 Opinion, and is therefore subject to dismissal for the same reason.

"The mere filing of an Amended Complaint does not entitle Plaintiff to relitigate his claims absent new factual allegations." *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 316 (S.D.N.Y. 2015), *aff'd*, 626 F. App'x 20 (2d Cir. 2015). Because the factual claims in the Amended Complaint are materially identical to those in the Complaint, "the law of the case doctrine counsels against reconsideration of the Court's . . . dismissal of the first Complaint." *Id.* Accordingly, and as described above, Plaintiff's claims are dismissed for substantially the same reasons they were dismissed in the 2020 Opinion. *See Perkins v. Perez*, No. 17-CV-1341, 2020 WL 248686, at *4–5 (S.D.N.Y. Jan. 16, 2020) (applying the law-of-the-case doctrine to dismiss portions of a pro se complaint where the two pleadings at issue were "substantially identical"); *Mateo v. Dawn*, No. 14-CV-2620, 2016 WL 5478431, at *4 (S.D.N.Y. Sept. 28, 2016) (same); *Guttilla v. City of New York*, No. 14-CV-156, 2016 WL 1255737, at *3 (S.D.N.Y. Mar. 29, 2016) (same).

### 2. Plaintiff's New Allegations

The Amended Complaint adds three allegations that did not appear in the initial Complaint. First, Plaintiff appears to add a new deliberate indifference claim based on an allegation that Alam has failed to "order[]" physical therapy following a surgical operation on Plaintiff's left knee. (Am. Compl. 2.) Plaintiff alleges that although physical therapy has "automatically been ordered" for his surgical operations in the past, Alam did not schedule physical therapy to rehabilitate Plaintiff's knee in retaliation for "Plaintiff's continued complaints

against the medical department." (*Id.*)[4]  Second, Plaintiff appears to add another deliberate indifference claim based on an allegation that he "has requested to be seen by dental and medical and has not been scheduled to see any physician." (*Id.* at 3.)  And third, Plaintiff appears to add a new conditions-of-confinement claim based on correctional staff's alleged failure to comply with Covid-19 safety protocols.  (*See id.* at 3–4.)

In its 2020 Opinion, the Court granted Plaintiff leave to amend for the limited purpose of "resolv[ing] the defects identified in th[at] Opinion." (2020 Op. 15.)  Plaintiff was not given carte blanche to add new claims and allegations unrelated to the underlying facts alleged in the initial Complaint.  The Court could dismiss Plaintiff's new claims, and disregard any new allegations, on this basis alone.  *See, e.g.*, *Ebron v. Lantz*, No. 04-CV-1375, 2006 WL 3246770, at *1, *4 (D. Conn. Nov. 6, 2006) (dismissing claims against new defendants in an amended complaint because the court "did not grant [the plaintiff] permission to add . . . new defendants, and [the plaintiff] never sought that permission"); *Pagan v. N.Y. State Div. of Parole*, No. 98-CV-5840, 2002 WL 398682, at *3 (S.D.N.Y. Mar. 13, 2002) (granting the defendants' motion to dismiss with prejudice as to new state law claims alleged in amended complaint when the court's order granted plaintiff leave to re-plead only his Title VII, § 1981, and NYSHRL claims); *Willett v. City Univ. of N.Y.*, No. 94-CV-3873, 1997 WL 104769, at *2 (E.D.N.Y. Feb. 18, 1997) (declining to consider five of eight claims in an amended complaint on the basis that they exceeded the scope of the court's order granting the plaintiff leave to amend); *Kuntz v. N.Y. State*

---

[4] The only allusion to Plaintiff's knees in the initial Complaint appears to be a non sequitur.  Describing the injuries related to his skin condition, Plaintiff included the phrase, "unnecessary pressure placed on knees." (Compl. 4.)  There is no discussion of knee surgery, physical therapy, or Alam's alleged retaliation related to physical therapy.  The initial Complaint focused solely on Plaintiff's skin condition and the alleged deprivation of daily medical showers.  (*See id.*)

*Bd. of Elections*, 924 F. Supp. 364, 367 (N.D.N.Y. 1996) (dismissing three new claims in amended complaint where they "appear[ed] to proceed on entirely new factual allegations and legal bases and clearly exceed[ed] the mandated scope of the [c]ourt's leave to amend"), *aff'd*, 113 F.3d 326 (2d Cir. 1997); *see also Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order) (finding no abuse of discretion in district court's decision to "reject [an] amended complaint as exceeding the parameters of the leave that was given," and noting that "[d]istrict courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted").

Moreover, each of Plaintiff's new allegations fails to state a claim. Plaintiff has failed to allege that the deprivation of physical therapy "pose[d] an unreasonable risk of serious damage to his health" such that the deprivation was sufficiently serious. *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). Although "[a] failure to provide for physical therapy after surgery may present a serious deprivation," *Eason v. Quinn*, No. 19-CV-219, 2020 WL 3129457, at *9 (D. Conn. June 12, 2020), Plaintiff's threadbare allegations—that the lack of physical therapy caused "deteriorat[ion]" and "pain" in his knee, (Am. Compl. 2)—are insufficient, without more, to satisfy the first element of a deliberate indifference claim, *see, e.g.*, *Abreu v. Brown*, No. 14-CV-6599, 2018 WL 565280, at *5 (W.D.N.Y. Jan. 22, 2018) (vague allegation that defendants denied the plaintiff physical and occupational therapy following hand surgery failed to state a claim); *Barrett v. Armor Corr. Health, Inc.*, No. 13-CV-1063, 2014 WL 1220756, at *4 (E.D.N.Y. Mar. 20, 2014) (allegation that the alleged deprivation caused the plaintiff "so much pain" "simply fail[ed] to plausibly allege a sufficiently serious injury"); *Flemming v. Wright*, No. 11-CV-804, 2013 WL 4804493, at *10 (N.D.N.Y. Sept. 9, 2013) (plaintiff failed to allege a serious

deprivation of medical care where he made "general allegations of pain" but "failed to allege specific factual material regarding" the alleged problem "or the degree of his pain during the time relevant to his claim"); *Gumbs v. Dynan*, No. 11-CV-857, 2012 WL 3705009, at *12 (E.D.N.Y. Aug. 26, 2012) ("[C]onclusory allegations that [the] defendants were aware of [the] plaintiff's medical needs and chronic pain but failed to respond are generally not sufficient proof of [the] defendants' deliberate indifference and cannot survive a Rule 12(b)(6) motion to dismiss."). Plaintiff fails to explain, for example, whether or how the alleged deprivation of physical therapy "significantly affect[ed] [his] daily activities." *Thurmond*, 2019 WL 1429559, at *5; *cf. Powell v. Corr. Med. Care, Inc.*, No. 13-CV-6842, 2014 WL 4229980, at *5 (S.D.N.Y. Aug. 15, 2014) (allegation that delay in physical therapy caused nerve damage and permanently limited the plaintiff's use of his hand stated a sufficiently serious deprivation to survive dismissal). Nor does Plaintiff specify the length of the alleged deprivation. *See Henderson v. Hannah*, No. 20-CV-560, 2021 WL 1565420, at *6 (D. Conn. Apr. 21, 2021) ("[T]he length of time an inmate is subjected to the condition is relevant in determining whether it is sufficiently serious."); *cf. Redd v. Garell*, No. 18-CV-9436, 2020 WL 1189491, at *1, *6 (S.D.N.Y. Mar. 12, 2020) (allegation that the defendant delayed physical therapy for eight months—during which the plaintiff experienced difficulty "bending forward, standing for more than a half hour, or sitting down" for extended periods of time—satisfied objective prong of Eighth Amendment deliberate indifference claim (record citation omitted)). Likewise, Plaintiff's allegation that he "has requested to be seen by dental and medical and has not been scheduled to see any physician," (Am. Compl. 3), is too vague and conclusory to establish a deliberate indifference claim, *see Barnes v. Annucci*, No. 19-CV-109, 2019 WL 1512799, at *12 (N.D.N.Y. Apr. 8, 2019) (dismissing deliberate indifference claim premised on allegation that the defendants had denied

13

plaintiff "all medical care," because this allegation was "vague and [did] not describe any specific medical condition of which defendants knew or should have been aware" (record citation omitted)).  Finally, to the extent Plaintiff brings a new conditions-of-confinement claim based on correctional staff's failure to comply with Covid-19 safety protocols, (*see* Am. Compl. 3–4), he makes no specific allegations regarding the Defendants named in this case, and thus, he has failed to allege Defendants' personal involvement in the putative constitutional violation, *see Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (citation omitted)); *Buchanan v. New York*, No. 21-CV-4194, 2021 WL 2075610, at *3 (S.D.N.Y. May 21, 2021) (explaining that if the plaintiff "names individuals as defendants" in an action based on the defendants' alleged failure to protect the plaintiff from contracting Covid-19 while in prison, the plaintiff "must allege facts regarding [the defendants'] personal involvement in the alleged violations of his rights"); *George v. City of New York*, No. 12-CV-6365, 2013 WL 5943206, at *6 (S.D.N.Y. Nov. 6, 2013) (holding that "the failure to allege that an individual was personally and directly involved is a fatal defect on the face of the complaint").

Accordingly, the Court dismisses Plaintiff's new deliberate indifference and conditions-of-confinement claims.

### III.  Conclusion

For the reasons stated above, Defendants' Motion is granted, and Plaintiff's claims are dismissed with prejudice.  The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 45), enter judgment for Defendants, and close this case.

14

SO ORDERED.

Dated: August 9, 2021
       White Plains, New York

                                              KENNETH M. KARAS
                                         United States District Judge